

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| LEO A. CRANFORD, | ) | |
| | ) | |
| Appellant, | ) | WD81558 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | May 28, 2019 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
**The Honorable Robert L. Koffman, Judge**

**Before Division Four:** Karen King Mitchell, Chief Judge, and
Alok Ahuja and Cynthia L. Martin, Judges

Leo Cranford appeals, following an evidentiary hearing, the denial of his Rule 24.035[1] motion for post-conviction relief. Cranford raises a single point on appeal; he argues that plea counsel provided ineffective assistance in failing to advise him that his sentence for first-degree child molestation under § 566.067[2] had to be served without eligibility for parole and that his conviction of first-degree statutory sodomy under § 566.062 required him to serve at least 85% of his sentence before becoming parole eligible. The motion court overruled Cranford's motion on

---

[1] All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise specified.
[2] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2014 supplement, unless otherwise noted.

the ground that parole eligibility is a collateral consequence of a guilty plea about which counsel has no duty to inform a client and, therefore, the failure to do so did not amount to ineffective assistance. Finding no error, we affirm.

**Background**

On June 20, 2016, Cranford appeared before the plea court to enter guilty pleas to first-degree child molestation and first-degree statutory sodomy. At the hearing, the plea court discussed the various rights attendant to a trial that Cranford was relinquishing by pleading guilty; Cranford acknowledged understanding them all and affirmed that he wished to proceed with his pleas. Cranford advised the court that he was pleading guilty of his own free will because he had committed the crimes with which he was charged. The prosecutor then established the following factual basis for Cranford's crimes:

> On July 29th of last year, the Defendant was in charge of the care of the child alleged by initials in Counts I and II. That child was two years old. While the Defendant was left in charge of that child, the parents were planning to make a quick run to town. When they left the home, they quickly realized they had forgotten something, [so] they returned to the home. When they returned, Mr. Cranford was nowhere to be found.
>
> The mother initially went to look to try to locate Mr. Cranford while the father went in to check on the child. When the father walked in shortly followed by the mother, they found their two-year-old laying on the bed with her diaper pulled down and the Defendant on his knees standing—kneeling over the child with his penis exposed.
>
> As the father came in, initially to make contact with the Defendant, the Defendant got up and left the home and announced that he was leaving to go turn himself in and ran out of the home. He shortly thereafter returned—went down to the Sheriff's Department, walked in and notified two separate officers that he was there to turn himself in and indicated that he [had] almost relapsed. He says almost.
>
> He then later was [M]irandized and confessed to walking into the room shortly after the parents left, pulling down the two-year-old's diaper, pulling his pants down and beginning to fondle her vagina shortly before the parents walked back in and interrupted the events. He was placed under arrest and, obviously, that's what brings [this] before us.

2

I note the statement that he [had] almost relapsed because the Defendant, as alleged and as noted to the Court in Count II, has a prior—is a prior convicted sexual offender.

Following the prosecutor's recitation and the plea court's description of an "open plea," the plea court asked Cranford if he wished to proceed with his pleas or if he wished to withdraw them and proceed to trial. Cranford responded, "I'll maintain my plea." The plea court accepted the pleas and set the matter for sentencing.

At sentencing, the State requested the maximum sentence available on both counts (30 years' imprisonment) and asked that the sentences be run consecutively. Plea counsel sought concurrent ten-year terms. While the plea court was discussing with Cranford its rationale for the sentence it was about to hand down, the prosecutor noted that the first-degree child molestation conviction was, by statute, a "parole-free sentence." The court then noted that if it imposed the maximum sentence, Cranford would be "100 years old by the time [he] came out." The plea court then pronounced Cranford's sentences:

> So it is the intent of this Court to sentence you to 30 years in the Missouri Department of Corrections on each sentence, and I'm not going to run them consecutive to each other. This is an AOWP,[3] you're going to do 30 anyway. You will be at an age when you get out, unless the law changes, where you will be incapable, in my opinion, of doing this conduct in the future, which is the goal. I won't run them consecutive because you turned yourself in and said I did it. But there are consequences to the action. I mean, you cannot be allowed to go out there and be a menace to the community anymore.

The plea court then advised Cranford of his rights under Rule 24.035 and questioned him about the assistance of plea counsel. Cranford advised the plea court that he had no complaints with plea counsel's representation in any way, and he further acknowledged that, in so stating, he

---

[3] Apparently this stands for an offense without parole eligibility.

3

understood that his assertion could later be used to defeat any allegation that plea counsel provided ineffective assistance.

Following his delivery to the Department of Corrections, Cranford timely filed a *pro se* Rule 24.035 motion. Appointed counsel thereafter timely filed an amended motion, which alleged—in part—that plea counsel provided ineffective assistance in failing to inform Cranford of the parole eligibility consequences of his guilty pleas. The motion court (who had also been the plea and sentencing court) granted an evidentiary hearing, wherein it took judicial notice of the underlying criminal case and received testimony from Cranford.

At the hearing, Cranford testified that he was not aware of the parole eligibility consequences attendant to his convictions when he pled guilty, and, had he known, he would not have pled guilty, but would have gone to trial. During cross-examination, Cranford steadfastly maintained that he always wanted to take the case to trial, but his plea counsel would not allow it. He also repeatedly denied responsibility and claimed that he had not done anything wrong.

The motion court entered findings of fact and conclusions of law, overruling Cranford's motion. The motion court noted that, "when the Court inquired of [Cranford] as to whether he had any complaints about his legal counsel, he did not tell the Court what he now expresses." The motion court concluded that "[h]is testimony now is not credible." Specifically with respect to Cranford's claim regarding knowledge of parole eligibility, the motion court found, "There is no evidence that plea counsel advised him one way or the other concerning the collateral consequences of his plea," and concluded that, because "[p]arole eligibility is considered a collateral consequence of a plea, about which counsel has no obligation to inform the defendant[, c]ounsel's failure to inform the movant of the parole eligibility does not affect the

4

voluntariness of his guilty plea." As such, the motion court overruled Cranford's motion, and he now appeals.

## Standard of Review

"Appellate review of the motion court's denial of a Rule 24.035 motion for post-conviction relief is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Bishop v. State*, 566 S.W.3d 269, 271 (Mo. App. W.D. 2019). "The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id.* (quoting *Simmons v. State*, 502 S.W.3d 739, 741 (Mo. App. W.D. 2016)).

## Analysis

In his sole point on appeal, Cranford argues that plea counsel provided ineffective assistance by failing to inform him of the parole eligibility consequences of his guilty pleas.

"To establish that he received ineffective assistance of counsel, [a movant] must prove by a preponderance of the evidence that [plea] counsel failed to exercise the level of skill and diligence of a reasonably competent attorney and that [the movant] was prejudiced by that failure." *Fonville v. State*, 563 S.W.3d 794, 799-800 (Mo. App. W.D. 2018).

"The validity of a plea of guilty depends on whether it was made voluntarily and intelligently, which means, *inter alia*, that the defendant must enter the plea with knowledge of the direct consequences of the plea." *Reynolds v. State*, 994 S.W.2d 944, 946 (Mo. banc 1999) (internal citation omitted). "Eligibility for parole . . . is merely a 'collateral' consequence of a defendant's plea, and, therefore, 'neither counsel nor the trial court is under an affirmative obligation to inform a defendant of the parole consequences of the guilty plea.'" *Webb v. State*, 334 S.W.3d 126, 129 (Mo. banc 2011) (quoting *Reynolds*, 994 S.W.2d at 946).

Despite the holdings in both *Reynolds* and *Webb*, Cranford argues that the United States Supreme Court's holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010), "eschewed this 'direct' versus 'collateral' consequences distinction." Contrary to Cranford's argument, the Supreme Court expressly *declined* to address the propriety of the distinction. *Padilla*, 559 U.S. at 365 (noting that, though the Court had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance[,]' . . . [w]hether that distinction is appropriate is a question we need not consider in this case"). Thus, "the well-established principle that plea counsel is not ineffective for failing to inform a defendant of the collateral consequences of a guilty plea is unaffected by *Padilla v. Kentucky*, 559 U.S. 356 (2010)." *Voegtlin v. State*, 464 S.W.3d 544, 555 (Mo. App. E.D. 2015) (internal citations omitted); *see also Simmons v. State*, 432 S.W.3d 306, 310 (Mo. App. E.D. 2014) ("It is clear that Missouri courts have declined to expand *Padilla's* reasoning beyond the deportation context into parole matters. Under existing case law, counsel has no obligation to advise a criminal defendant about the parole consequences of his guilty plea." (internal citations omitted)). As such, Cranford's claim is without merit and denied.[4]

---

[4] In any event, "Article V, § 2 of the Missouri Constitution provides that the Missouri Supreme Court's 'decisions shall be controlling in all other courts.'" *Johnson v. State*, 451 S.W.3d 276, 281 (Mo. App. W.D. 2014) (Ahuja, C.J., concurring) (quoting Mo. Const. art. V, § 2). Unless "*Reynolds'[s]* holding on this federal constitutional issue is overruled by the Supreme Court of the United States or by the Missouri Supreme Court, it is binding on this Court." *Id*. As such, even if we were so inclined to accept Cranford's argument, we are constitutionally precluded from doing so.

**Conclusion**

The motion court did not clearly err in overruling Cranford's Rule 24.035 motion. Its judgment is affirmed.

_____
Karen King Mitchell, Chief Judge

Alok Ahuja and Cynthia L. Martin, Judges, concur.

7